**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Reliance Hospitality LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ASNL Incorporated,<br><br>    Defendant. | No. CV-21-01970-PHX-DJH<br><br>**ORDER** |

This matter arises out of a contract for hotel management services. Plaintiff/Counter Defendant Reliance Hospitality LLC d/b/a Reliance Hotel Group ("Reliance") has filed a "Motion for Case-Ending Sanctions and Motion for Summary Judgment" (Doc. 20) against Defendant/Counter Claimant ASNL, Inc. d/b/a Holiday Inn Sioux ("ASNL").[1] Reliance argues it is entitled to case-ending sanctions against ASNL under Federal Rule of Civil Procedure 37(d)(1)(A)(ii) because ASNL failed to respond to discovery requests. Alternatively, Reliance contends it is entitled to summary judgment under Rule 56[2] on its breach of contract claim and ASNL's breach of contract counterclaim. The Court will address each of Reliance's requests in turn. Reliance's Motion is denied in its entirety because ASNL's failure to respond is justified, and disputes of fact remain for trial.

---

[1] The matter is briefed. ASNL filed a Response (Doc. 23) and Reliance filed a Reply (Doc. 24). Reliance requested oral argument on the matter. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, Reliance's request is denied. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] Unless otherwise noted, all Rule references are to the Federal Rules of Civil Procedure.

I.  **Reliance's Motion for Sanctions**

The Court will first evaluate whether Rule 37(d) sanctions are warranted against ASNL for failing to produce discovery. The Court set the deadline for completion of fact discovery in this matter as September 2, 2022. (Doc. 13 at ¶ 4). Below is a timeline of the parties' discovery efforts:

- On March 31, 2022, ASNL notified the Court that it served Reliance its Initial Disclosure Statement under Rule 26 (Doc. 14);

- On March 31, 2022, Reliance notified the Court that it served ASNL its Initial Disclosure Statement under Rule 26 (Doc. 15);

- On June 17, 2022, the parties filed a Joint Report on Settlement Talks (Doc. 19), indicating a settlement offer was under consideration and that the parties expected settlement discussions to continue over the course of discovery;

- On June 30, 2022, Reliance notified the Court that it served ASNL Non Uniform Interrogatories and Requests for Production of Documents (Doc. 18); and

- On July 19, 2022, ASNL notified the Court that it served Reliance Non Uniform Interrogatories and Requests for Production of Documents (Doc. 17). Reliance served ASNL its responses on September 1, 2022. (Doc. 19).

At issue is ASNL's failure to respond to the Non Uniform Interrogatories and Requests for Production of Documents that Reliance sent on June 30, 2022 (the "June 30 Requests"), which the Court characterizes as a discovery dispute. Reliance sent the June 30 Requests to ASNL via email. (Doc. 20 at 5–6). Counsel for Reliance then contacted ASNL on September 2, 2022, to notify ASNL its discovery responses were "more than 30 days late, and ASNL's failure to response has severely prejudiced [Reliance's] ability to prove [its] claims and defend[.]" (*Id.* at 6 quoting Doc. 20-1 at 60). ASNL did not respond to this email until October 14, 2022. (*See* Doc. 20-1). Reliance now seeks case-ending sanctions in the form of dismissal or default judgment. (Doc. 20 at 7–9).

A.  **Legal Standard for Sanctions under Rule 37(d)**

Rule 37(d) permits a district court to order sanctions "if a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails

- 2 -

to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A)(ii). District courts enjoy "great latitude" in imposing sanctions and may take any of the following actions:

    (i)    direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

    (ii)    prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

    (iii)    strik[e] pleadings in whole or in part;

    (iv)    stay[] further proceedings until the order is obeyed;

    (v)    dismiss[] the action or proceeding in whole or in part;

    (vi)    render[] a default judgment against the disobedient party; or

    (vii)    treat[] as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*Id.* (d)(3) (referencing *id.* (b)(2)(A)(i)—(vi)); *see Lew v. Kona Hosp.*, 754 F.2d 1420, 1425 (9th Cir. 1985). "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees[.]" Fed. R. Civ. P. 37(d)(3).

        When a party fails to respond to discovery requests, sanctions are mandatory unless the party's failure to act "was substantially justified or other circumstances make an award of expenses unjust." *Lee v. Walters*, 172 F.R.D. 421, 425 (D. Or. 1997) (citing Fed. R. Civ. P. 37(d)(3)). The party facing sanctions bears the burden of showing its noncompliance was justified. *See Hawk v. Bank2 & Dovenmuehle Mortg., Inc.*, 2016 WL 6662742, at *3 (D. Or. Oct. 19, 2016) (citing *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994)). When considering the "drastic sanctions of dismissal or default" as in this case, "the range of [the district court's] discretion is narrowed and the losing party's non-compliance must be due to willfulness, fault or bad faith." *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981) (citing *Societe International v. Rogers*, 357 U.S. 197, 212 (1958)). Neither dismissal nor default may be imposed "when failure to comply is due to

circumstances beyond the recalcitrant's control." *Id.* (citing *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980)).  Courts must also weigh various policy factors before issuing case-ending sanctions.  *See Porter v. Martinez*, 941 F.2d 732, 733 (9th Cir. 1991).

### B. Reliance is not Entitled to Sanctions against ASNL

The Court finds that ASNL's actions do not warrant case-ending sanctions under Rule 37(d) because Counsel for ASNL substantially justified his failure to respond and there is no evidence of bad faith.  Moreover, the relevant policy factors weigh against issuing sanctions.

#### 1. Substantial Justification or Other Circumstances

First, Counsel for ASNL's failure to respond was substantially justified.  He claims the June 30 Requests were not actually served because the parties did not agree to service via electronic email.  (Doc. 23 at 7).  Reliance does not contend its attempted service by email was improper, but rather argues it accomplished service by filing a notice of service of discovery through this Court's electronic-filing system.  (Doc. 24 at 11).

Rule 5 provides that "[a] paper is served . . . by sending it to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing." Fed. R Civ. P. 5(b).  Thus, service via email is only permitted when the parties consent to that electronic means in writing.  *Id.*  Although Reliance electronically filed a *notice* of its purported service of the June 30 Requests, this did not accomplish service because Reliance did not electronically file the actual *paper* it sought to serve upon ASNL—i.e., the June 30 Requests.  Nor can the Court ascertain from the record any agreement among the parties to service by electronic mail.

Counsel for ASNL further represents the email containing the June 30 Requests was "overlooked and not opened" because at the time, Counsel for ASNL had contracted COVID-19 and did not recover until the second week of July.  (Doc. 20-1 at 70).  In addition to the lack of service, these unforeseeable, health-related circumstances were beyond Counsel for ASNL's control and render sanctions inappropriate.

The Court therefore finds ASNL has sufficiently showed its failure to respond "was substantially justified." *Sigliano*, 642 F.2d at 310; *Hawk*, 2016 WL 6662742, at *3.

### 2. Willfulness or Bad Faith

Second, the present matter is distinguishable from Reliance's supporting authorities because there is no evidence that ASNL's non-compliance was due to willfulness, fault, or bad faith. "'[D]isobedient conduct not shown to be outside the control of the litigant' is all that is required to demonstrate willfulness, bad faith, or fault." *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 946 (9th Cir. 1993) (quoting *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1341 (9th Cir. 1985)). Reliance cites to various cases that have issued case-ending sanctions under Rule 37(d) when (1) the nonmovants violated discovery procedures multiples times; and (2) the movants requested for court intervention at least once before seeking case-ending sanctions.[3]

By contrast, ASNL's failure to respond to the June 30 Requests was the only alleged Rule 37 violation throughout the course of this matter. *See Adriana Int'l Corp. v. Thoeren*,

---

[3] Reliance cites to the following cases for support: *Wolde-Giorgis v. Anderson*, 2007 WL 756924 (D. Ariz. Mar. 8, 2007) (awarding case-ending sanctions when (1) the nonmovant failed to timely serve his initial disclosure statement, failed to respond to written discovery, failed to appear at his deposition, and repeatedly ignored the court's order with respect to amending his complaint; and (2) the movants had sought and participated in a status conference to discuss the discovery issues); *Lee v. Walters*, 172 F.R.D. 421, 424 (D. Or. 1997) (awarding case-ending sanctions when (1) the nonmovant failed to schedule and attend depositions, timely file an Answer, and respond to the movant's requests for production; and (2) the movant filed three motions to compel under Rule 27(a) and participated in a scheduling conference to discuss the discovery issues); *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981) (awarding case-ending sanctions when (1) the nonmovant failed to respond to interrogatories, failed to respond to an associated motion to compel, and failed to appear at a hearing on a motion to dismiss; and (2) the movant had filed a motion to compel and subsequent motion to dismiss and participated in a hearing to discuss the discovery issues); *Hester v. Vision Airlines*, Inc., 687 F.3d 1162, 1169 (9th Cir. 2012) (awarding case-ending sanctions when (1) the nonmovant refused to respond to interrogatories and requests for productions and failed to comply with the court's order to produce certain documents; and (2) the movant had filed two motions to compel and participated in two hearings to discuss the discovery issues); *North Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986) (awarding case-ending sanctions when (1) the nonmovant failed to comply with the court's order compelling discovery and falsely represented to the court they did not have control over the discovery sought; and the (2) the_ movant participated in hearings to discuss the discovery issues); and *G–K Properties v. Redevelopment Agency of City of San Jose*, 577 F.2d 645, 647–48 (9th Cir. 1978) (awarding case-ending sanctions when (1) the nonmovant failed comply with the court's multiple orders compelling discovery; and (2) the movant participated in hearings to discuss the discovery issues)). (*See* Doc. 20 at 7–8).

- 5 -

913 F.2d 1406, 1411 (9th Cir. 1990) ("In evaluating the propriety of sanctions, we look at all incidents of a party's misconduct."). Counsel for ASNL's misconduct was substantially justified due to Reliance's inadequate service and unforeseeable, health-related circumstances, both of which were beyond Counsel for ASNL's control. *See supra* Section I.B(1). Plaintiff also failed to timely raise the subject discovery dispute to the Court before the fact discovery deadline, or request court intervention before seeking case-ending sanctions. *See infra* Section I.C.

The Court therefore finds ASNL's actions do not warrant the drastic sanctions of dismissal or default. *See Sigliano*, 642 F.2d at 310.

### 3. Policy Factors for Case-ending Sanctions

Last, Reliance argues sanctions are appropriate as a matter of policy because "ASNL's failure to participate in discovery has prejudiced Reliance in its prosecution of this matter and frustrated the Court's interest in a speedy and expeditious litigation." (Doc. 24 at 11).

Courts evaluate five factors in considering whether dismissal or default as a Rule 37(d) sanction is appropriate: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Porter*, 941 F.2d at 733 (quoting *Malone v. United States Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987)) (alterations in original). "The first two [] factors favor the imposition of sanctions in most cases, while the fourth cuts against a default or dismissal sanction." *See Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). Accordingly, the "key factors" to consider are the availability of lesser sanctions and the risk of prejudice to the moving party. *Id*. Here, Reliance concedes that less drastic sanctions are available (Doc. 20 at 8). Thus, the remaining, dispositive consideration is the risk of prejudice to Reliance.

"A [plaintiff] suffers prejudice if the [defendant's] actions impair the [plaintiff's] ability to go to trial or threaten to interfere with the rightful decision of the case." *Adriana*

*Int'l Corp.*, 913 F.2d at 1411. Reliance maintains lack of access to the discovery sought in the June 30 Requests "severely prejudiced [] its ability to anticipate and rebut [ASNL's] defenses and counterclaim." (Doc. 20 at 2). However, ASNL states, and Reliance does not dispute, that "[t]he information requested in the unserved discovery requests was available from and duplicative of the disclosure and documents produced in the case" including the 302 pages of documents ASNL produced as part of its Initial Disclosure Statement.[4] (Doc. 23 at 7). The Court therefore finds that any risk of prejudice to Reliance as a result of ASNL's failure to respond to the June 30 Requests is low.

Accordingly, the balance of the five relevant factors does not weigh in favor of case-ending sanctions in this matter.

### C.   Reliance Did Not Follow the Discovery Disputes Procedure

Reliance's Motion for Sanctions is even more improper because it is predicated on a discovery dispute that Reliance did not timely raise to the Court. The Court's Rule 16 Scheduling Order (Doc. 13) details the specific procedure for addressing discovery disputes in this Court:

> The parties shall not file written discovery motions without leave of Court. If a discovery dispute arises and cannot be resolved despite sincere efforts to resolve the matter through personal consultation (in person or by telephone), the parties shall jointly file (1) a brief written summary of the dispute, not to exceed two pages, with explanation of the position taken by each party and (2) a joint written certification that the counsel or the parties have attempted to resolve the matter through personal consultation and sincere effort as required by LRCiv 7.2(j) and have reached an impasse. If the opposing party has refused to personally consult, the party seeking relief shall describe the efforts made to obtain personal consultation.

(*Id*. at 4). The Court explicitly stated that "[a]bsent extraordinary circumstances, the Court will not entertain fact discovery disputes after the deadline for completion of fact discovery[.]" (*Id*.)

---

[4] Reliance does not deny that it received these referenced documents. Reliance only points out that ASNL does not provide with its Response or cite to any of these referenced documents. (Doc. 24 at 6).

- 7 -

ASNL's deadline to respond to the June 30 Requests was July 29, 2023,[5] yet Reliance waited until the September 2, 2022, fact discovery deadline to confer with ASNL on the issue. Reliance did not timely file with ASNL a joint summary of the dispute before the fact discovery deadline. Instead, the first time Reliance alerted this Court of ASNL's nonresponse was through its October 14, 2022, Motion for Sanctions (Doc. 20). Reliance has not shown any extraordinary circumstances exist that justify bringing a discovery dispute after the fact discovery deadline. (Doc. 13 at 4). Under the Court's Rule 16 Scheduling Order, a Motion for Sanctions is the incorrect vehicle to address a discovery dispute for the first time in this Court.

To summarize, the Court will deny Reliance's request for case-ending sanctions under Rule 37 because ASNL's failure to timely respond to the June 30 Request is substantially justified and there is no indication of bad faith. *See* Fed. R. Civ. P. 37(d)(3). In any event, Reliance has not sufficiently shown why drastic sanctions of dismissal or default are warranted. Furthermore, Reliance's request for sanctions is improperly predicated on a discovery dispute that Reliance failed to raise to the Court. (Doc. 13 at 4).

## II. Motion for Summary Judgment

The Court now turns to Reliance's Motion for Summary Judgment. The Court will first provide an overview of the facts underlying the parties' contract dispute and the applicable standard of review. The Court will then turn to the merits of the Motion.

### A. Background

Reliance is a Delaware limited liability company headquartered in Phoenix, Arizona, and provides operation services to its hotel clients. (Doc. 1 at ¶ 2; 20 at 3). ASNL is a Missouri corporation and operates a hotel located at 701 Gordon Drive, Sioux City, Iowa ("the Hotel"). (*Id*. at ¶ 3; Doc. 8 at 3). On July 1, 2020, Reliance and ASNL entered into a Hotel Management Agreement (the "Management Agreement") (Doc. 20-1 at 3–13). Reliance represents, and ASNL does not dispute, that the Management Agreement is governed by Arizona state law. (Doc. 1 at ¶ 17).

---

[5] The June 30 Requests required ASNL to "respond under oath and produce the documents described herein within the 30 (thirty) days of service hereof." (Doc. 20-1 at 29).

### 1. The Terms of the Parties' Agreement

Under the Management Agreement, ASNL contracted Reliance to assume "operation, direction, management, and supervision of the Hotel" and "all such responsibilities as agent for and on the account of . . . [ASNL.]" (Doc. 20-1 at 4). For consideration, the Management Agreement required ASNL to pay Reliance a monthly "Management Fee" calculated as "3% of the Hotel Room Revenue or $5,000, whichever is greater, plus a $1,500.00 fee for shared services monthly." (*Id*. at 10).

Section 2[6] provided the term of the Management Agreement was from July 1, 2020–July 1, 2021, subject to automatic renewal "unless either party . . . notifies the other party no less than ninety days before the expiration of the existing [o]riginal Term[.]" (*Id*. at 9).

Section 9 governed termination of the Management Agreement. Section 9.1 allowed a party to affirmatively terminate the Management Agreement in two ways. First, either party may terminate "effective immediately, by reason of gross negligence, willful misconduct, or fraud" by the other party. (Doc. 20-1 at 11). Second, either party may terminate by written notice upon the occurrence of a "Termination Event" as defined under Section 9.2(a)–(d). (Doc. 20-1 at 11). The provision at issue in this case is Section 9.2(b), which defined one Termination Event as:

> The failure by either party to keep, observe, or perform any representation, warranty, covenant, agreement, term, condition, or provision of this [Management A]greement that remains uncured by the defaulting party a period of thirty (30) days after the non-defaulting party's written notice of the same to the defaulting party; provided that *no cure period shall be available* for any failure by [Reliance] of its obligations hereunder that does or is likely to result in a default, breach, or failure under the Franchise Agreement or Mortgage.

(Doc. 20-1 at 12) (emphasis added). Under this language, the 30-day notice-and-cure requirement is suspended in certain circumstances—namely, if a party engages in conduct that is likely to breach the referenced Franchise Agreement or Mortgage.[7] (*Id*.) In those

---

[6] Unless where otherwise noted, all Section references are to the Management Agreement.

[7] Neither party has produced a copy of the referenced "Franchise Agreement" or "Mortgage." Reliance's Motion is based on an incomplete copy of the Management

scenarios, the other party may terminate the Agreement immediately. Section 9.5 further provided that "[i]f th[e Management] Agreement is terminated by [ASNL] other than pursuant to a Termination Event then, in addition to all Management Fees and Operating Expenses that are due and payable for periods prior to the Termination Date, [ASNL] shall pay to [Reliance]" certain liquidated damages. (*Id.* at 12).

### 2. ASNL Terminates the Management Agreement

On June 7, 2021, ASNL sent a "Notice of Termination" (*Id.* at 15–16) to Reliance. ASNL justified its termination under Section 9.2(b), claiming Reliance "failed to keep, observe, or perform the following provisions of the Agreement:"

(1) In violation of Section 6.2 of the Agreement, Reliance failed to deliver a "a monthly report of the state of the business and affairs of the operation of the Hotel";[8]

(2) In violation of Section 1.2(d) of the Agreement, Reliance personnel were not wearing uniforms or name tags "accordance with Franchisor standards";

(3) In violation of Sections 4.4 and 4.5 of the Agreement, Reliance has charged ASNL with fees that are not authorized under the Agreement, including "excessive travel fees incurred for Reliance's employees' and agents' travel to and from the Hotel";[9] and

(4) In violation of Section 1.1 of the Agreement, Reliance failed to "direct, supervise, manage, and operate the Hotel in all aspects in an efficient, professional, and economical manner" by, among other things, "[c]losing the Hotel without good cause, [m]ismanaging reservations such that approximately 60 reservations were 'lost' on one day . . . [k]eeping 16 rooms out of service since last year, and [f]ailing to adequately clean the premises."

(*Id.* at 15); (*see also* Doc. 8 at ¶ 6). The Notice stated ASNL's termination was "absolute" and shall take effect on July 8, 2021. (*Id.*) ASNL further explained that because Reliance's conduct, "particularly numbers 2 and 4, [were] likely to result in a default, breach, or failure under the Franchise Agreement, [the] termination may [have] be effective immediately

---

Agreement (Doc. 20-1 at 3–13).

[8] Neither party has produced Section 6 of the Management Agreement in evidence.

[9] Neither party has produced Section 4 of the Management Agreement in evidence.

- 10 -

under Section 9.2(b.)" (*Id*. at 16). However, ASNL opted to give Reliance 31 days of notice "in the interest of smooth transition[.]" (*Id*.)

On October 27, 2021, Reliance sent "Notice of Default" (*Id*. at 18–19) to ASNL stating "ASNL materially breached the [Management] Agreement by terminating the Agreement without cause on July 8, 2021." (*Id*. at 18). Reliance explained ASNL also breached the Management Agreement when it "failed to make the required payments under the [Management] Agreement since the purported termination," and that this breach "triggered contractual and liquidated damages under Section 9.1 and 9.5 of the [Management] Agreement." (*Id*.)

On November 15, 2021, Counsel for ASNL sent a "Response Letter" that contested Reliance's Notice of Default (Doc. 23-1). Therein, Counsel for ASNL reiterated that ASNL's immediate termination of the Management Agreement is justified for the same reasons as listed in ASNL's Notice of Termination. (*Id*. at 1). The Response Letter further detailed additional breaches that were discovered during the transition of management, including Reliance's failure to pay third-party booking channels and vendors and provide a general onsite manager. (*Id*. at 1–2).

### 3. Reliance's Allegations

Reliance filed a Complaint (Doc. 1) alleging ASNL committed breach of contract and breach of the implied covenant of good faith and fair dealing when it wrongfully terminated the Management Agreement. (*Id*. at ¶¶ 24–34). Reliance claimed ASNL's Notice of Termination violated the proscribed termination procedures because it did not abide by the notice-and-cure requirement under Section 9.2(b). (*Id*. at ¶ 20). Reliance seeks compensatory and expectation damages as relief. (*Id*. at 5).

### 4. ASNL's Allegations

ASNL filed an Answer and Counterclaim (Doc. 8) against Reliance. ASNL asserted the following affirmative defenses: Reliance breached the Management Agreement first by failing to perform its duties; ASNL's Notice of Termination was timely and with merit; setoff; bad faith; failure of consideration; failure to mitigate damages; and unclean hands.

(*Id*. at ¶¶ 8–10). ASNL also brought a breach of contract counterclaim, citing to Reliance's alleged misconduct as listed in ASNL's Notice of Termination. (*Compare id*. at ¶ 6 *with* Doc. 20-1 at 15). ASNL further claimed Reliance's actions were grossly negligent and in willful disregard of its duties under the Management Agreement. (Doc. 8 at ¶ 8). ASNL seeks compensatory damages as relief. (*Id*. at ¶ 13).

**B.     Legal Standard for Summary Judgment under Rule 56**

The Ninth Circuit has clarified the "abstract" vocabulary for discussing summary judgment standards:

> Because either a plaintiff or a defendant can move for summary judgment, we customarily refer to the moving and nonmoving party rather than to plaintiff and defendant. Further, because either plaintiff or defendant can have the ultimate burden of persuasion at trial, we refer to the party with and without the ultimate burden of persuasion at trial rather than to plaintiff and defendant.

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A court will grant summary judgment under Rule 56 if the moving party shows (1) there is no genuine dispute of material fact and (2) it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material when identified as such by substantive law. *Id*. A court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994).

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once met, the burden then shifts to the non-moving party, who must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "Where the record taken as a whole could not

1 lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for
2 trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

3 Additionally, "the moving party must offer evidence sufficient to support a finding
4 upon every element of his claim for relief, except those elements admitted by his adversary
5 in his pleadings, or by stipulation, or otherwise during the course of pretrial." *United States*
6 *v. Dibble*, 429 F.2d 598 , 601 (9th Cir. 1970). Thus, it is generally a "heavy burden" for a
7 plaintiff to seek summary judgment. *Barnes v. Sea Hawaii Rafting*, LLC, 889 F.3d 517,
8 538 (9th Cir. 2018). When the moving party bears the burden of persuasion at trial, "it
9 must come forward with evidence which would entitle it to a directed verdict if the
10 evidence were uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir.
11 1992). In this way, the standard for summary judgment "mirrors the standard for a directed
12 verdict under Federal Rule of Civil Procedure 50(a)[.]" *Celotex*, 477 U.S. at 323.

**C.  Discussion**

Reliance seeks summary judgment on its breach of contract claim and ASNL's breach of contract counterclaim. At the outset, the Court notes that both parties have done a poor job at producing evidence. The summary judgment record includes the following: an incomplete copy of the Management Agreement, ASNL's Notice of Termination, Reliance's Notice of Default, ASNL's Response Letter, and various declarations. Neither party has produced the Franchise Agreement they both so heavily reference. Thus, the Court is in a precarious position where it must issue a ruling based on a fragmented and incomplete record.

The Court will set forth the legal elements for a breach of contract claim before evaluating whether Reliance has met its burden for summary judgment on either of the parties' claims. Reliance's Motion for Summary Judgment is ultimately denied due to lack of information from which the Court can rule.

**1.  Breach of Contract Under Arizona Law**

A breach of contract claim under Arizona law requires three elements: (1) the existence of a contract; (2) its breach; and (3) resulting damages. *See Graham v. Asbury*,

540 P.2d 656, 657 (Ariz. 1975); *see also IOW, LLC v. Breus*, 425 F. Supp. 3d 1175, 1185 (D. Ariz. 2019). "[I]nterpretation of a contract is generally a matter of law." *Powell v. Washburn*, 125 P.3d 373, 375 (Ariz. 2006). "A party breaches a contract when it 'fail[s], without legal excuse, to perform any promise which forms the whole or part of a contract.'" *IOW, LLC v. Breus*, 425 F. Supp. 3d 1175, 1185 (D. Ariz. 2019) (quoting *Snow v. W. Sav. & Loan Ass'n*, 730 P.2d 204, 210 (Ariz. 1986)). Whether a party has breached a contract is a question of fact for the jury to resolve. *See Great W. Bank v. LJC Dev., Ltd. Liab. Co.*, 362 P.3d 1037, 1045 (Ariz. Ct. App. 2015) (citing *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 31 (2002)).

It is undisputed that the parties entered into the Management Agreement as a binding contract under element one. Thus, at issue are the elements of breach and resulting damages. Both parties agree that Section 9 of the Management Agreement provided for the following termination procedures:

- ASNL was allowed to terminate immediately under Section 9.2(b) if Reliance engaged in conduct that did or was likely to breach the Franchise Agreement;
- ASNL was allowed to terminate immediately under Section 9.1 if Reliance engaged in gross negligence, willful misconduct, or fraud; and
- ASNL was required to provide a 30-day cure period before terminating under Section 9.2(b) if Reliance failed to perform under the Management Agreement.

The parties arguments for breach are circular: Reliance says the manner in which ASNL terminated the Management Agreement violated these procedures; ASNL says its immediate termination was justified under these procedures. (*Compare* Doc. 20 at 10–12 *with* Doc. 23 at 9).

### 2. Reliance's Breach of Contract Claim

Reliance seeks summary judgment on its breach of contract claim as the moving party with the burden of persuasion at trial. It argues ASNL wrongfully terminated the Management Agreement for two reasons. First, Reliance contends ASNL did not provide

Reliance with a "30-day notice-and-opportunity-to-cure" in its Notice of Termination as required by Section 9.2(b), which constitutes a material breach under Arizona law. (Doc. 20 at 9 citing *Schaeffer v. Chapman*, 176 Ariz. 326, 861 P.2d 611 (1993)). Second, Reliance maintains ASNL was bound by the notice-and-cure requirement because Reliance did not engage in actions that did or was likely to result in breach of the Franchise Agreement; or commit gross negligence, willful misconduct, or fraud. (Doc. 20 at 10–12). ASNL opposes, arguing "the trier of fact must resolve the question of whether the numerous actions of Reliance in mismanaging the Hotel rose to the level that allowed immediate termination under the Agreement." (Doc. 23 at 9). ASNL also disputes the issue of damages. (Doc. 23 at 10). Reliance counters that ASNL's Response is deficient because it is based on insufficient and impermissible evidence under summary judgment standards. (Doc. 24 at 3–5).

Reliance sufficiently cites to the record to show ASNL did not afford Reliance with any opportunity to cure. (*See* Doc. 24 at 3). Indeed, the unequivocal language of the Notice of Termination stated that ASNL's termination of the Management Agreement under Section 9.2(b) was "absolute" and shall take effect on July 8, 2021. (Doc. 20-1 at 15). But when the moving party bears the burden of persuasion at trial, it must show that "the evidence is so powerful that no reasonable jury would be free to disbelieve it" in order to prevail on summary judgment. *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (citation omitted). To fully satisfy its burden to demonstrate absence of factual disputes, Reliance must also identify portions of the record that show ASNL was bound by the notice-and-cure requirement—that is, Reliance did not breach the Franchise Agreement or engage in gross negligence. Doing so would prove ASNL wrongfully terminated the Management Agreement under Section 9.2(b).

The Court is unpersuaded by Reliance's efforts to meet its initial burden. Reliance simply argues ASNL has introduced no evidence that Reliance breached the Franchise Agreement or engaged in gross negligence. (Doc. 20 at 10–12). Reliance does not otherwise point to evidence disproving these accusations. Yet, it is ultimately Reliance

that bears the burden to show ASNL's termination was not justified. The summary judgment record therefore does not contain evidence "so powerful that no reasonable jury would be free to disbelieve" that ASNL's immediate termination was not warranted. *Shakur*, 514 F.3d at 890. Because Reliance fails its burden as the moving party to show there is no genuine factual dispute, the Court need not push the burden back on ASNL. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) ("Summary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues.").

### 4. ASNL Breach of Contract Claim

Reliance also argues it is entitled to summary judgment on ASNL's breach of contract counter claim as the moving party without the burden of persuasion at trial. To do so, Reliance repeats its arguments that ASNL has offered no evidence showing Reliance either breached the Franchise Agreement or engaged in gross negligence. These arguments, without more, are insufficient. Although Reliance emphasizes ASNL's failure to meet its burden, it also neglects to meet its own burden in the first instance.

If a moving party without the ultimate burden of persuasion at trial "fails to produce affirmative evidence negating an essential element of the nonmoving party's claim or defense," it does not carry its initial burden of production for summary judgment. *Nissan Fire*, 210 F.3d at 1105 (citing *Adickes*, 398 U.S. at 158). Similarly, it cannot meet its burden "simply by saying that the nonmoving party has no such evidence." *Id.* (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991) ("Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial.")).

Reliance cannot merely rely on ASNL's absence of evidence to argue it is entitled to summary judgment on ASNL's counterclaim. For example, in its Motion or Reply, Reliance does not attempt to refute ASNL's assertions of breach.[10] Reliance only attacks the absence of ASNL's evidence, which will not suffice under summary judgment

---

[10] Although Reliance states it "does not admit to any wrongdoing when it comes to its performance under the Agreement," this blanket statement alone is insufficient to disprove that material issues of fact remain in this case for trial. (Doc. 24 at 2).

- 16 -

standards. Reliance does not attempt to produce affirmative evidence that negates ASNL's breach of contract counterclaim, and summary judgment cannot be granted for this reason. *Id.*; *Adickes*, 398 U.S. at 158.

### III. Conclusion

Reliance is neither entitled to case-ending sanctions under Rule 37, nor entitled to summary judgment under Rule 56. Summary judgment is authorized "only where . . . it is quite clear what the truth is." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962) (internal quotation marks omitted) (quoting *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 627 (1944)). In this case, the record is so devoid of any concrete facts that arguments either for or against a dispositive motion are nonsensical. While ASNL has not proved Reliance breached the Franchise Agreement or committed gross negligence, Reliance also has not meaningfully rebutted those accusations. Because Reliance did not carry its initial burden of production on its breach of contract claim or ASNL's breach of contract counterclaim, ASNL had no obligation to provide evidence in response. *See Nissan Fire*, 210 F.3d at 1107; *Adickes*, 398 U.S. at 160. Whether Reliance's conduct did or did not justify ASNL's immediate termination of the Management Agreement is for the jury to decide.

Accordingly,

**IT IS ORDERED** that Plaintiff/Counter Defendant Reliance Hospitality LLC d/b/a Reliance Hotel Group's "Motion for Case-Ending Sanctions and Motion for Summary Judgment" (Doc. 20) is **DENIED**.

**IT IS FURTHER ORDERED** that that in light of the denial of the Motion for Summary Judgment, the parties are directed to comply with Paragraph 10 of the Rule 16 Scheduling Order (Doc. 13 at 6–7) regarding notice of readiness for pretrial conference.

/ / /

/ / /

/ / /

/ / /

**IT IS FINALLY ORDERED** that the parties shall indicate when assistance from the Court is needed in seeking settlement of the case. Upon a joint request by the parties, the Court will refer the matter for a settlement conference before a Magistrate Judge.

Dated this 16th day of August, 2023.

Honorable Diane J. Humetewa
United States District Judge